CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TRENESSIDAHSAAN EDMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24cv00308 |
| v. | ) | |
| | ) | |
| MCDONALD'S USA, LLC, | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| CULLEN MANAGEMENT LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC CULLEN | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Trenessidahsaan Edmonds brings this action against Defendants Cullen Management LLC and Eric Cullen (collectively, "Cullen Defendants") and McDonald's USA, LLC, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Virginia Human Rights Act ("VHRA"). The Cullen Defendants move for partial dismissal, while McDonald's seeks dismissal of the complaint in its entirety. Dkts. 13; 22. Because the VHRA does not impose individual liability, the Cullen Defendants' motion to dismiss the VHRA claims against Eric Cullen is **GRANTED**. However, the motion is **DENIED** as to all remaining claims against the Cullen Defendants. Edmonds fails to allege sufficient facts to establish that McDonald's exercised the requisite control over the Pulaski restaurant's operations to support joint employer or actual/apparent agency liability. Accordingly, McDonald's motion to dismiss is **GRANTED**, and all claims against it are **DISMISSED**.

1

## I.    BACKGROUND[1]

Edmonds is a Black female who was employed as a crew member at a McDonald's restaurant in Pulaski, Virginia from April 2017 until her employment was terminated on September 5, 2020. Dkt. 1-2 ¶¶ 3, 13. McDonald's is a Delaware limited liability company that is the franchisor of the Pulaski McDonald's. *Id.* ¶ 4. Cullen Management is a Virginia limited liability company that is the franchise owner of the Pulaski McDonald's. *Id.* ¶ 5. Cullen is a member or manager of Cullen Management who possessed the power to make hiring and firing decisions for Pulaski McDonald's. *Id.* ¶ 6.

Throughout Edmonds's employment at the Pulaski McDonald's, customers, in the presence of the managers, including Cullen and Greg Capps, routinely used racial slurs to refer to Edmonds and other Black employees. Multiple customers also refused to touch the hands of Edmonds' and other Black employees when exchanging change or debit/credit cards for payment. Customers did not do this with White employees. *Id.* ¶ 15. Managers were aware that this conduct distressed Edmonds and other Black employees but failed to act to protect them from the alleged racial harassment. Furthermore, White employees at the Pulaski McDonald's openly used the phrase "what up, my [n-word]" toward Edmonds and other Black employees in the presence of managers. The managers saw this derogatory and discriminatory conduct toward Edmonds and the other Black employees and took no corrective action. The behavior persisted. *Id.* ¶ 21. Cullen confirmed that he was aware of the racial slurs directed towards Edmonds. Dkt. 1-2 ¶ 28.

---

[1] I accept as true the facts alleged in the Amended Complaint when reviewing a motion to dismiss. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Edmonds contends that while she was employed at the Pulaski McDonald's there was a notable decline in the number of Black employees. In September 2020, Chandler Rummery, another Pulaski McDonald's manager, told Edmonds that Pulaski McDonald's fired multiple Black employees because of their race. *Id.* ¶ 19. Moreover, Edmonds alleges that Pulaski McDonald's managers and owners systematically subjected Black employees to disparate treatment. For instance, one Black employee quit after being individually assigned to complete numerous difficult and demeaning tasks, which ordinarily would be evenly parceled out amongst multiple employees. *Id.* ¶ 20. Similarly, Edmonds asserts that White employees could call in sick, no show/no call, not abide by dress codes, arrive late to their shift, and commit other infractions without being written up or fired. Conversely, Black employees like Edmonds were disciplined for similar infractions. *Id*. ¶ 31.

On September 5, 2020, Capps, who is White, demanded that Edmonds and another Black employee remove their Black Lives Matter face masks. *Id.* ¶ 22. At that time, Edmonds understood that McDonald's had a mask policy which simply required employees to wear a face covering that covered their nose and mouth. The Policy said nothing about the design of such masks. Employees at the Pulaski McDonald's were permitted to wear masks with a variety of designs, including one featuring the Washington Redskins logo and another displaying a rainbow design. *Id.* ¶ 23. When Edmonds and the other Black employee refused to remove their Black Lives Matter face masks, they were told to leave the premises, and their employment was terminated. Dkt. 1-2 ¶ 25. Following her termination, Edmonds communicated with Defendant Cullen, and he refused to permit her to return to work. *Id.* ¶ 27. Edmonds asserts that she satisfactorily performed her job, and that she was given no valid reason for her discharge. *Id.* ¶ 29.

Edmonds filed a nine-count complaint under federal and state law bringing claims for racial discrimination, racial harassment and hostile work environment, and retaliation under Title VII, 42 U.S.C. § 1981, and the VHRA. Specifically, Edmonds claims:

> Count I – Racial Discrimination in Violation of Title VII against McDonald's and Cullen Management
> Count II – Racial Harassment and Hostile Work Environment in Violation of Title VII against McDonald's and Cullen Management
> Count III – Retaliation in Violation of Title VII against McDonald's and Cullen Management
> Count IV - Racial Discrimination in Violation of § 1981 against all Defendants
> Count V – Racial Harassment and Hostile Work Environment in Violation of § 1981 against all Defendants
> Count VI – Retaliation in Violation of § 1981 against all Defendants
> Count VII – Racial Discrimination in Violation of the VHRA against all Defendants
> Count VIII – Racial Harassment and Hostile Work Environment in Violation of VHRA against all Defendants
> Count IX – Retaliation in Violation of VHRA against all Defendants

McDonald's filed a motion to dismiss all claims against it, arguing that Edmonds fails to allege sufficient facts to establish its liability as a joint employer or as the actual or apparent principal of the Cullen Defendants. Dkt. 22. Cullen Defendants filed a partial motion to dismiss for failure to state a claim, asking the Court to dismiss Edmonds' racial discrimination and retaliation claims under Title VII and 42 U.S.C. § 1981 (Counts I, III, IV, VI), and all her claims under the VHRA (Counts VII, VIII, and IX). Dkts. 13; 14.

## II.  LEGAL STANDARD

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a complaint does not satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). The

4

complaint must assert facts that "nudge [] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "In the context of a Title VII case, an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss." *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). But, the factual allegations must "raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted). Plaintiffs meet this burden when they "allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584-85 (4th Cir. 2015).

### III. ANALYSIS

A. <u>McDonald's motion to dismiss</u>

McDonald's moves to dismiss the complaint in full, arguing that Edmonds has not plausibly alleged it can be held responsible for her claims under either a joint employer or an actual/apparent agency theory of liability. To be liable under Title VII, a defendant must qualify as an employer. See *Lundberg*, No. 3:23cv00042, 2024 WL 1676806, at *3. "Because Title VII and the VHRA use substantially identical language, the Court analyzes . . . Title VII and VHRA claims together." *Washington v. Offender Aid and Restoration of Charlottesville-Albemarle, Inc.*, 677 F.Supp.3d 383, n.4 (W.D. Va. 2023). Additionally, § 1981 guarantees all persons in the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Since at-will employment relationships are contractual, such relationships can be predicate contracts for § 1981 claims. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018–19 (4th Cir. 2015).

1. <u>Joint employer liability</u>

The Fourth Circuit has determined that multiple entities may simultaneously be considered employers for purposes of Title VII. "The basis for the finding that two companies are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Butler v. Drive Auto. Indus. of America, Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (quoting *Torres—Negron v. Merck & Co.*, 488 F.3d 34, 40 n.6 (1st Cir. 2007).

A plaintiff alleging joint employer liability must establish basic facts to withstand a motion to dismiss. *See Chapman v. Saber Healthcare Grp.*, LLC, No. 2:20cv106, 2020 WL 9348160, at *3 (E.D. Va. Dec. 2, 2020). To determine whether two entities are joint employers, the Fourth Circuit relies upon a hybrid test, weighing nine factors:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler*, 793 F.3d at 414. None of these factors are dispositive, however, the "common-law element of control remains the 'principal guidepost' in the analysis." *Id.* The Fourth Circuit has explained that the first three factors are the most important. *Id.*

At the pleadings stage, courts have reached differing conclusions on whether allegations of uniform policies, corporate oversight, mandatory training, and control over scheduling are

6

sufficient to establish McDonald's as a joint employer under Title VII.[2] Some courts in the Eastern District of Virginia and this District have found that determining joint employer status often involves fact-intensive inquiries inappropriate for resolution on a motion to dismiss.[3] However, the central question remains whether, viewing the Complaint in the light most favorable to Edmonds, it is plausible that McDonald's exercised sufficient control to be liable as her joint employer under Title VII, § 1981, and the VHRA. I find it is not.

Edmonds alleges that McDonald's "tightly controls the working conditions" at the Pulaski McDonald's, including human resources policies, the work environment, mandatory

---

[2] *See, e.g., Hills v. McDonald's Corp.*, No. 20-cv-06237 (D.N.J. June 29, 2021), ECF No. 65 (noting that "comprehensive 'policies and manuals,' and 'rules, directives, and/or commands that all of McDonald's franchisees must follow,' which relate to standardization across the brand rather than specific involvement in personnel management" are insufficient to demonstrate that a franchisee and franchisor were a plaintiff's employers); *Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 365 (E.D. Pa. 2020)(dismissing claims against McDonald's finding broad allegations of control over franchisee operations, including business, inventory, and supervision, insufficient to establish joint employer status); *Chavez v. McDonald's Corp.*, No. 19-CV-00164-PAB-SKC, 2020 WL 1322864, at *5 (D. Colo. Mar. 20, 2020) ("Plaintiffs must allege more than that McDonald's Corporation or McDonald's USA controlled the Ultra Mac McDonald's 'operations'" to establish joint employer liability); *Contra Lindblad v. J&I Servs., Inc.*, No. 4:18-CV-1336-RBH-TER, 2019 WL 653968, at *11 (D.S.C. Jan. 30, 2019), *report and recommendation adopted sub nom. Lindblad v. J&L Servs., Inc.*, No. 418CV01336RBHTER, 2019 WL 652248 (D.S.C. Feb. 15, 2019)(citing *Butler*, 793 F.3d 404, 410 (4th Cir. 2015)) (plaintiff plausibly pled joint employer liability based on McDonald's control over franchisee operations, hiring, training, scheduling, oversight, and policies).; *Smith v. JEENS, Inc.*, 566 F. Supp. 3d 941, 946 (S.D. Iowa 2021)(finding a plaintiff adequately plead joint employer liability between McDonald's and its franchisee for a Title VII sexual harassment claim by averring that McDonald's issued governing workplace harassment policies, was informed of plaintiffs' allegations, and conducted an internal investigation of the matter); and *Johnson v. McDonald Corp.*, 542 F. Supp. 3d 888, 892 (E.D. Mo. 2021) (allegations of McDonald's inspections, employee oversight, training mandates, and operational guidance were sufficient to allege joint employer liability).
[3] *See Bile v. RREMC, LLC*, No. 3:15CV51, 2015 WL 3902391, at *3–4 (E.D. Va. June 24, 2015); *Tietgen v. Brown's Westminster Motors*, 921 F. Supp. 1495, 1504 (E.D. Va. 1996) ("Defendants' argument here [on joint employer liability] is too fact dependent to succeed on a motion to dismiss."); *Wright v. Mountain View Lawn Care, LLC*, No. 7:15-cv-00224, 2016 WL 1060341, at *1 (W.D. Va. March 11, 2016).

7

training, and discipline, including termination. Dkt. 1-2 ¶ 7. She further asserts that McDonald's controlled the Pulaski McDonald's operations "through policies and manuals governing every aspect of restaurant operations; continued oversight by corporate representatives and in-store computer systems, including mandatory computer systems which generate employees' schedules and assignments; comprehensive training of all restaurant employees from general management to cooks, including attendance at Hamburger University; and involvement with hiring and firing decisions." *Id.* at ¶ 8. These allegations, however, are insufficient to support a claim of joint employer liability.

Applying the *Butler* factors, Edmonds fails to allege non-conclusory facts demonstrating that McDonald's controls her employment. First, she does not sufficiently plead that McDonald's had the authority to hire or fire her, apart from the generalized assertion that it oversaw "the disciplining and firing of workers, among other things." Dkt. 1-2 ¶ 7. This conclusory statement lacks factual support showing that McDonald's played any role in hiring or firing decisions at the Pulaski McDonald's. *See contra Smith v. JEENS, Inc.*, 566 F. Supp. 3d 941, 946 (S.D. Iowa 2021) (finding joint employer liability plausibly alleged where plaintiff notified McDonald's USA of workplace harassment, McDonald's investigated, and plaintiff was subsequently terminated).

Second, Edmonds does not allege facts indicating that McDonald's exercised direct supervision over her daily work. Mere assertions that McDonald's established operational policies and brand-wide standards do not suffice. Courts have consistently held that such general oversight is inadequate to establish the level of control necessary for joint employer liability. *See Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 366 (E.D. Pa. 2020) ("Plaintiffs must allege more than that McDonald's Corporation or McDonald's USA controlled the [franchisee's]

8

'operations.'") (quoting *Chavez v. McDonald's Corp.*, No. 19-cv-00164, 2020 WL 1322864, at *4 (D. Colo. Mar. 20, 2020)).

Third, Edmonds' allegations that McDonald's controlled the Pulaski McDonald's "physical work environment" lacks specific factual support regarding the furnishing of workplace equipment, another key *Butler* factor. Moreover, Edmonds' specific allegations pertaining to the remaining *Butler* factors, including the use of McDonald's mandatory computer systems for employee scheduling and assignments, the issuance of a McDonald's uniform, and the sale of McDonald's products are likewise overly broad and conclusory.

Ultimately, Edmonds' allegations describe a standard franchisor-franchisee relationship in which McDonald's enforces brand consistency through policies, training, and operational guidelines. Such allegations fail to establish that McDonald's exercised direct control over her workplace conditions sufficient to impose joint employer liability. *See Ries v. McDonald's USA, LLC*, No. 1:20-CV-2, 2021 WL 5768436, at *5 (W.D. Mich. Dec. 6, 2021) ("Control over conformity to standard operational details inherent in many franchise settings" does not establish employer liability under Title VII) (quoting *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991)). The Fourth Circuit emphasizes that "control remains the 'principal guidepost' in the analysis." *Butler*, 793 F.3d at 414. Here, Edmonds fails to allege facts demonstrating that McDonald's exercised the necessary level of control over her employment.

2. <u>Actual and/or apparent agency liability</u>

In the alternative to her "joint employer" theory of liability, Edmonds argues that McDonald's is liable under theories of actual or apparent agency. However, she does not allege sufficient facts to establish a plausible agency relationship.

9

Under Virginia law, agency relationships may be established through actual or apparent authority. *See Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 219 (1975). Actual agency exists when an agent reasonably believes, based on the principal's manifestations, that the principal intends for the agent to act on its behalf. *See Ashland Facility Operations, LLC v. NLRB*, 701 F.3d 983, 990 (4th Cir. 2012). Apparent agency, by contrast, exists when a principal's actions would lead a third party to reasonably conclude that an agency relationship exists. *See Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 218 (4th Cir. 2015). Edmonds bears the burden of pleading sufficient facts to establish either form of agency. *See Reitz v. CVY of Alexandria, LLC*, No. 1:23-CV-959, 2024 WL 1356678, at *3 (E.D. Va. Mar. 29, 2024).

Control is the defining characteristic of an actual agency relationship. *See Wynn's Extended Care, Inc.*, 619 F. App'x at 218. As discussed, Edmonds fails to plead facts demonstrating that McDonald's exercised control over the daily operations or personnel management at the Pulaski McDonald's.

To establish apparent agency, an employee's belief in an agent's authority must be reasonable and based on manifestations by the principal. *See* Restatement (Third) of Agency § 7.08 cmt. b. "The apparent agency relationship is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal." *Wright v. Mountain View Lawn Care, LLC*, No. 7:15-CV-00224, 2016 WL 1060341, at *10 (W.D. Va. Mar. 11, 2016) (quoting *Giordano v. Atria Assisted Living, Virginia Beach, LLC*, 429 F. Supp. 2d 732 (E.D. Va. 2006)). The general allegations that McDonald's provided standardized policies, training, uniforms, and procedures merely reflect the fundamentals of a franchise relationship. Edmonds does not identify any representations by McDonald's that could have reasonably led her to believe it authorized or endorsed the alleged discrimination and harassment.

Simply put, McDonald's cannot be held liable just because Edmonds mistakenly believed it was her employer or controlled her workplace conditions consistent to that of any franchisor. Imposing liability on this basis would prevent McDonald's from asserting a defense available to actual employers, who have the means to prevent or correct workplace harassment. *See Ries*, 2021 WL 5768436, at *6 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

B. Cullen Defendants' partial motion to dismiss

1. Racial discrimination causes of action

In Counts I, IV, and VII, Edmonds asserts claims for racial discrimination under Title VII, § 1981, and the VHRA. Title VII makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). These two proscriptions are referred to as the "disparate treatment" (or "intentional discrimination") and "disparate impact" provisions of Title VII. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).

To establish liability under Title VII for disparate treatment Edmonds must either "demonstrate through direct or circumstantial evidence that race was a motivating factor in the

employer's adverse employment action"; or use the burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]

> To establish a claim under *McDonnell Douglas*, a plaintiff must put forth a prima facie case of discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. . . . The fourth element is met if similarly-situated employees outside the protected class received more favorable treatment.

*Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (cleaned up).

To state a prima facie case for disparate impact under Title VII, a plaintiff must identify a facially neutral employment practice or policy that has a "significantly discriminatory impact" on a class protected by Title VII. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005). Edmonds must allege specific facts beyond merely citing a "generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). Instead, a plaintiff must "isolate[e] and identify [] the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* Once a specific employment policy has been identified, a plaintiff "must allege either the existence of numerical or statistical evidence demonstrating disparate impact or sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that [the employment practice] has a discriminatory impact on [the protected group]." *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020). The "essential elements of a race discrimination claim"

---

[4] Claims for disparate treatment under § 1981 and the VHRA are governed by the same legal standards as those arising under Title VII. *See Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (Title VII and Section 1981 discrimination claims are subject to the same legal standards); *Lundberg v. Delta Response Team*, No. 3:23-cv-42, 2024 WL 1676806, at *3 (W.D. Va. Apr. 18, 2024) (applying the Title VII framework to both Title VII and VHRA disparate treatment claims).

12

under Title VII and Section 1981 "are identical." *Freeman v. N. State Bank*, 282 F. App'x 211, 215 (4th Cir. 2008).

The VHRA likewise provides that it is unlawful for an employer to discriminate against any individual "because of such individual's race, color, religion, sex, sexual orientation, gender identity, . . . ." Va. Code § 2.2-3905(B)(1)(a). Under the VHRA, a claim of wrongful discrimination "requires a plaintiff only to demonstrate that they possess one of the enumerated personal characteristics and that the employer used this protected personal characteristic as a 'motivating factor' to harm the plaintiff, even if other lawful factors also motivated the conduct." *Moore v. Copper River Shared Servs., LLC,* No. CL-2023-9565, 2024 WL 366099, at *4 (Fairfax Cnty. Cir. Ct. Jan. 30, 2024).

Edmonds pled that the Cullen Defendants disparately subjected Black employees to increased work, heightened employment standards, and harsher disciplinary actions. Particularly, Edmonds alleges that unlike other Pulaski McDonald's employees, she and her Black coworker were ordered to leave the premises, and were terminated, for failure to comply with an order to remove their Black Lives Matter face masks. At the motion to dismiss stage in proceedings, Edmonds need only plead sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Notably, in *Tutt v. Wormuth*, the Fourth Circuit stated that if a plaintiff's explanation that a particular action was discriminatory is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6) regardless of whether there is a more plausible alternative explanation. No. 19-2480, 2021 WL 4076729 at *2 (4th Cir. Sept. 8, 2021) (citing *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

Here, Edmonds' alleged that her work for Pulaski McDonald's was satisfactory and that she was terminated for declining to remove a Black Lives Matter face mask, when White

13

employees were allowed to wear face coverings bearing other designs. This allegation supports a plausible claim that her firing was racially motivated. As such, I find that Edmonds pled sufficient factual allegations to satisfy the elements of her racial discrimination causes of action to raise her right to relief above the speculative level. *See Coleman*, 626 F.3d at 190. The motion to dismiss Count I against Cullen Management and Counts IV and VII against the Cullen Defendants is thus denied.

2. Edmonds' retaliation causes of action

Counts III, VI, and IX of the complaint assert claims for retaliation under Title VII, § 1981, and the VHRA respectively. Retaliation claims under these statutes contain three general elements: (1) a plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two incidences. *See e.g.*, *McKinney v. G4s Gov't Sols., Inc.,* 711 F. App'x 130, 137 (4th Cir. 2017) (listing the same elements for Title VII and § 1981); *Washington,* 677 F. Supp. 3d at 398 (listing the same elements for Title VII and the VHRA); *Balazs v. Liebenthal,* 32 F.3d 151, 158 (4th Cir. 1994) (applying these elements to a motion to dismiss).

"[T]o adequately plead a Title VII retaliation claim, a complaint must 'allege [ ] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's] protected activity.'" *Barbour v. Garland*, No. 22-1815, 2024 WL 3092297, at *9 (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)). Protected activity under Title VII's antiretaliation provision includes discrimination against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Moreover, termination is unquestionably an adverse employment action under Title VII. *Patterson v. Virginia Dep't of Corr.*, No.

14

3:23CV757, 2024 WL 1704669, at *4 (E.D. Va. Apr. 19, 2024). The Fourth Circuit has stated, "a plaintiff may demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or by a combination of the two." *Barbour*, 2024 WL 3092297, at *11 (quoting *Roberts v .Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021)).

Edmonds alleges she was terminated after repeatedly reporting racial discrimination and harassment to Cullen and other managers at the Pulaski McDonald's. She also asserts that she refused to remove her Black Lives Matter mask because she "reasonably believed that the request to remove her mask was racially discriminatory *was* protected activity." Dkt. 24 at 21. Edmonds' immediate termination following this request plausibly establishes a temporal proximity to her refusal to remove her Black Lives Matter mask. Further, the complaint includes additional allegations that suggest a retaliatory animus to her termination. *See Barbour*, 2024 WL 3092297, at *11–15; *Houck*, 791 F.3d at 484 ("To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)). As such, Edmonds retaliation claim is sufficiently plead to survive the Cullen Defendants' motion to dismiss.

3. Edmonds' VHRA causes of action against Cullen[5]

The Cullen Defendants also move to dismiss Counts VII, VIII, and IX against Cullen individually, arguing there is no individual liability under the VHRA. Edmonds argues that Cullen is responsible for hiring and firing decisions, and he is an "agent" of the employer per

---

[5] The Cullen Defendants are no longer pursuing their argument that Edmonds failed to exhaust her administrative remedies, *see* Dkt. 26 at 10, and thus it is not addressed in this Opinion.

Virginia Code § 2.2-3905(A). Under § 2.2-3905(A), "'[e]mployer' means a person employing (i) 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . .' However, the language 'any agent of such person' used in the VHRA merely, 'provides context for calculating how many persons are employed to determine if a person qualifies as an employer'" *Saville v. Nw. Reg'l Jail Auth.*, No. 5:22-CV-057, 2024 WL 82737 (W.D. Va. Jan. 8, 2024). To hold otherwise would "dramatically expand the scope of the [statute]." *Id.*, at *8; *see also Lundberg v. Delta Response Team, LLC,* No. 3:23CV00042, 2024 WL 1676806, at *3 (W.D. Va. Apr. 18, 2024) (noting that courts in this district consistently find no individual liability under the VHRA). Cullen, as a "member, manager or director, officer, and employee of [Cullen Management]" does not qualify as an "employer" under the VHRA. Accordingly, Counts VII, VIII and IX will be dismissed with prejudice against Cullen only, as I find there is no individual liability under the VHRA.

## IV.   CONCLUSION

The Cullen Defendants' motion to dismiss is **GRANTED** as to Edmonds' VHRA claims against Cullen, which are **DISMISSED with prejudice**, but **DENIED** as to all remaining claims. McDonald's motion to dismiss is **GRANTED**, and Edmonds' claims against McDonald's are **DISMISSED without prejudice**. An appropriate order accompanies this Memorandum Opinion.

Entered:  April 9, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

16